IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL M. WHITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-04-1310-HE |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner, Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Daniel M. Whited ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated these proceedings in October, 1999, by filing claims for disability insurance benefits and supplemental security income payments, alleging that Arnold-Chiari deformity,[1] headaches, arthritis in both knees, swelling in his hands, tingling in

---

[1] Arnold-Chiari malformation is "a congenital anomaly in which the cerebellum and medulla oblongata, which is elongated and flattened, protrude down into the spinal canal through the foramen magnum." *Dorland's Illustrated Medical Dictionary*, p. 438 (27th Ed. 1988).

his legs and difficulties with his back became disabling as of August 21, 1999 [Tr. 4, 75 - 77 and 87].[2] Plaintiff's claims were denied; he subsequently sought and received a de novo hearing[3] before an administrative law judge ("ALJ") [Tr. 4, 49 - 52 , 54 - 56 and 57]. During the final supplemental administrative hearing in this case, counsel for Plaintiff advised the ALJ that Plaintiff was attempting to return to work and, accordingly, amended his request for benefits to a closed period beginning on August 21, 1999, and ending on March 1, 2002 [Tr. 14 and 351 - 352]. In his May, 2002, hearing decision, the ALJ found that Plaintiff was not disabled as he retained the capacity to perform his past relevant work [Tr. 14 - 18]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review, and Plaintiff subsequently sought review of the Commissioner's final decision in this court [Tr. 5 - 6].

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*,

---

[2]While the List of Exhibits in the transcript describes various documents relating to Plaintiff's supplemental security income application [Tr. 4], these documents were not included in the transcript.

[3]Three administrative hearings were conducted in this matter, the first on April 24, 2001, before ALJ Hiltbrand [Tr. 296 - 332]. Judge Hiltbrand heard testimony from Plaintiff but postponed the testimony of the vocational expert until an assessment of Plaintiff's work-related abilities could be obtained from his treating physician [Tr. 329]. A supplemental hearing was then conducted by Judge Hiltbrand on July 10, 2001, where the treating physician's recommendation that Plaintiff see a neurologist for treatment of his headache pain was discussed [Tr. 333 - 348]. According to the testimony, Plaintiff had followed his treating physician's recommendation and had been examined by a neurologist, but his notes were difficult for Judge Hiltbrand to read [Tr. 345]. Judge Hiltbrand determined that a consultative evaluation was required and again postponed a decision [Tr. 345 - 347]. The third and final hearing was held on April 16, 2002, before ALJ O'Bryan who subsequently entered the decision at issue here on May 23, 2002 [Tr. 14 - 18 and 349 - 376].

331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is far from superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen,* 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler,* 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner,* 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th

3

Cir. 1984). In this case, the ALJ determined that Plaintiff could perform his past work and concluded the inquiry at the fourth step.

**Plaintiff's Claims of Error**

It is Plaintiff's contention that the ALJ erred by determining that Plaintiff did not have a severe mental impairment and that he further erred in his assessment of Plaintiff's credibility. Following a review of the ALJ's decision, Plaintiff's claims will be addressed in inverse order.

**The ALJ's Decision**

In reviewing the medical evidence of record, the ALJ found that Plaintiff had a congenital Arnold-Chiari malformation with symptoms including headaches with accompanying nausea, vomiting, neck pain, blurred vision and numbness of the upper and lower extremities [Tr. 15 and 166 - 167]. In October 1999, Plaintiff underwent a suboccipital craniectomy but, despite the procedure, continued to complain about headaches and associated symptoms [Tr. 15 and 181 - 190].

Treatment notes by Plaintiff's neurologist dated October 11, 2000, noted that Plaintiff was taking prescribed narcotic pain medications and that his complaints of chronic headache would continue as long as the medication was taken [Tr. 15 and 239]. Plaintiff admitted probable narcotic addiction and acknowledged that he would likely have headaches and, consequently, be dependent on narcotic pain medication for the remainder of his life [Tr. 15 and 249]. Plaintiff also smoked marijuana to supplement his pain control [Tr. 15]. Plaintiff indicated a willingness to enter into a contract for narcotic dependency [Tr. 15 and 249]. He was subsequently placed on methadone but stopped

taking it after a few months because of anger problems [Tr. 15 and 246].

Of particular relevance to Plaintiff's claim of error with respect to the ALJ's credibility assessment, the ALJ continued his review of the medical evidence with the following summary of a consultative examination [Tr. 291 - 292]:

> The claimant underwent a consultative neurological evaluation on September 18, 2001. He complained of headache associated with nausea, numbness in his hands, light sensitivity and a sense of imbalance. Clinical testing, however, showed no sign of organic neurological deficit, although he exhibited some functional symptoms. The neurologist stated he tended to embellish his syptomatology.

[Tr. 15, record citation omitted].

The final item of evidence regarding Plaintiff's physical impairments as noted by the ALJ was an April 15, 2002, statement from Scott Williams. D.O., stating that Plaintiff presented in July, 2001, with headache pain requiring home confinement [Tr. 15 and 295]. Dr. Williams listed the medications Plaintiff was taking at that time, stating that these medications had then been gradually replaced with other medications and that Plaintiff's pain had now been under control for approximately six months [Tr. 15 and 295].

In connection with Plaintiff's claim of mental impairment, the ALJ discussed Plaintiff's March, 2000, psychological evaluation where he reported symptoms of irritability and temper problems [Tr. 15 and 200]. Plaintiff's attention, concentration and recent memory were found to be mildly limited, and he was diagnosed with Adjustment Disorder with Mixed Disturbance of Emotions and Conduct [Tr. 15 and 200 - 205].

The ALJ then concluded that Plaintiff "had a severe congenital Arnold Chiari malformation, status post surgical repair [and that] [h]is headache, sensory deficits and

adjustment disorder are not shown to have significantly limited his functional capacity." [Tr. 16]. He next stated that he was required to determine at step three of the sequential process whether any of Plaintiff's severe impairments met listing level criteria. *Id.* Instead of addressing, however, the impairment which he had found to be severe – severe congenital Arnold Chiari malformation, status post surgical repair – the ALJ analyzed Plaintiff's alleged mental impairment, an analysis which the undersigned believes was actually in response to the requirements of the special technique for determination of the severity of a mental requirement. *See* 20 C.F.R. §§ 404.1920a and 416.920a. This is evident from the four functional areas referenced by the ALJ: activities of daily living; social functioning; concentration, persistence or pace, and, episodes of decompensation. *See* 20 C.F.R. §§ 404. 1520a (c) (3) and 416.920a (c) (3). The ALJ determined that Plaintiff had no severe limitations in any of these four functional areas, emphasizing that Plaintiff enjoyed a good marital relationship; took care of his personal needs and cared for his three minor children while his wife was at work; watched television and went fishing occasionally; visited with his father, brother and sister, and, despite some irritable spells, got along with people most of the time [Tr. 16].

Turning to the fourth step in the sequential process, the ALJ wrote:

> Based on a consideration of the entire record, the Administrative Law Judge finds that the claimant had the residual functional capacity for medium work. Specifically, he was not found to have any organic neurological deficits. While the consultative neurologist found some functional limitations, he was at a loss to explain why it was felt his congenital malformation was causing him to have headaches in the absence of hydrocephalus. He further stated that the claimant's continued complaints even after his surgery confirmed his opinion. A close perusal of the neurologist's report discloses that he though the claimant was trying to fool him by embellishing his symptoms. His headaches are thought to be

associated with his over use of narcotic pain medications. (The Administrative Law Judge notes that even if a claimant is disabled, social security regulations prohibit the payment of benefits if drug and/or alcohol addiction is a material factor in a claimant's inability to work.)[4]

[Tr. 16 - 17]. Because Plaintiff's past relevant work had been at the medium exertional level, the ALJ concluded that Plaintiff's could return to his past relevant work and had not been "under a disability at any time relevant to this decision." [Tr. 17].

## Credibility

It is Plaintiff's argument that the ALJ made no credibility findings with regard to Plaintiff's complaints of pain. A review of the ALJ's decision demonstrates that while the ALJ made certain findings that the Commissioner argues are, in fact, credibility findings, those findings are, in one instance, not supported by the evidence and are, on the whole, legally insufficient under the applicable regulations.

As evidence that the ALJ made a supportable credibility finding in this case, the Commissioner advances the ALJ's finding that the consultative neurologist had stated that Plaintiff was embellishing his symptoms, thus providing a basis for the ALJ to find that Plaintiff was not believable. The undersigned has, however, carefully examined the September 18, 2001, report of the consultative neurologist, Sherman Lawton, M.D., and reports to the court that Dr. Lawton neither found nor in any way intimated that Plaintiff was exaggerating his symptoms [Tr. 291 - 294]. To the contrary, Dr. Lawton noted functional findings but was unable to find any objective neurological deficit [Tr. 292].

---

[4] It should be noted that the ALJ's parenthetical statement was just that, a statement, and not an adjudicative finding. Neither in the discussion portion of his decision nor in the formal findings did the ALJ determine that Plaintiff was disabled but that benefit payments should be denied on account of drug addiction. Instead, the ALJ found that Plaintiff's residual functional capacity for medium work allowed him to return to his past relevant work and, consequently, that Plaintiff was not under a disability [Tr. 17 - 18].

Rather than stating that Plaintiff was embellishing his symptoms, Dr. Lawton appeared to question the medical rationale for believing that Plaintiff's congenital malformation had caused his headaches. *Id.* In short, the ALJ's determination that an examining physician had found that Plaintiff was exaggerating his symptoms lacks evidentiary support.

The second matter which the Commissioner claims constituted/supported a credibility finding by the ALJ was an April 15, 2002, medical opinion stating that Plaintiff's pain had been under control for the past six months [Tr. 295]. Even, however, if the record demonstrated that the ALJ had actually considered this report in the context of a credibility assessment – a fact not borne out by the record – it has no bearing on the closed period of disability from August 19, 1999, onset through until October 15, 2001, the date which is six months prior to the April 15, 2002, report. As to the third and final report which the Commission argues constitutes/supports a credibility finding by the ALJ, Exhibit 9F [Tr. 184 - 190] was only referenced by number by the ALJ during his discussion of the medical evidence [Tr. 15] and findings contained in the report were not discussed by the ALJ.

Plaintiff is correct in his assertion that the ALJ did not make a credibility assessment in this case and he is equally correct in his argument that, absent such assessment, remand is required. *See* 404.1529 (c) (1) and 416.929 (c) (1) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we *must* then evaluate the intensity and persistence of your symptoms so that we

8

can determine how your symptoms limit your capacity for work.") (emphasis added)).

**Mental Impairment**

On remand, the ALJ will have the opportunity to reevaluate the severity of Plaintiff's diagnosed adjustment disorder in accordance with the provisions of 20 C.F.R. §§ 404.1920a and 416.920a, thereby eliminating the confusion created in the current record where the severity determination appears to have been made at step three of the sequential analysis. The ALJ will also have the opportunity to discuss various functional limitations which had been observed by the examining mental health source and by two reviewing sources in their analyses of Plaintiff's mental impairment. *See* 20 C.F.R. §§ 404.1527 and 419.927. For example, in discussing the results of Plaintiff's consultative psychological evaluation, the ALJ noted that "testing revealed no objective evidence of anxiety, although [Plaintiff's] attention, concentration and recent memory were mildly limited." [Tr. 16]. In this same vein, the state agency physicians who reviewed Plaintiff's medical records and completed Psychiatric Review Technique Forms, both determined that Plaintiff was slightly restricted in his activities of daily living and had slight difficulties in maintaining social functioning [Tr. 217 and 234]. The ALJ found, however, in what the undersigned believes was the ALJ's special technique assessment, that Plaintiff had no severe limitations in activities of daily living or social functioning and that he was able to maintain attention, concentration, persistence, and pace [Tr. 16]. No explanation was provided as to why the opinion of the examining medical source was rejected or why the reviewing experts' opinions regarding restrictions, albeit slight, were

disregarded.[5]

## RECOMMENDATION

For the foregoing reasons, it is recommended that the decision in this case be reversed and the matter remanded to the Commissioner pursuant to 42 U.S.C. §405(g) for further proceedings consistent with this Report. The parties are advised of their right to object to this Report and Recommendation by October 27th, 2005, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 7th day of October, 2005.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE

---

[5] Neither did the ALJ include any of these limitations in Plaintiff's residual functional capacity or in his hypothetical questioning to the vocational expert. With respect to *any* such limitations, one panel of the Tenth Circuit has recently reiterated:
> "'Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.' *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (brackets and quotation omitted). We have held that, where the record supported some limitation on particular functions, 'the ALJ's failure to include in his hypothetical inquiry to the vocational expert *any* limitation in this regard violated the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record.' *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (footnote omitted.)"

*Miranda v. Barnhart*, No. 04-1500, slip op. at 4 (10th Cir. Aug. 11, 2005)